Page number 13, 1-5, 3-5. Sean Sutterman, M.D. vs. Mark Basson and others. Arguments in item C, 15 minutes per side. Mr. Perron, for the appellate. Okay, Mr. Herron. May it please the court, I'm Jeff Herron, appearing on behalf of the appellant. I requested the clerk to reserve time for rebuttal. I'd like to reserve two minutes, please. As the court is aware, this case involves a medical staffing dispute. I don't think there's any dispute that the initial appeal proceedings were devoid of sufficient constitutional due process. The appeal breaks down into what I view as three parts on our request for an injunction. Number one, should a second hearing have occurred before the Michigan State Health Team Governing Board? And that question subsumes two of the issues in my brief. One, whether the board, the state, had any continuing jurisdiction to conduct such a hearing. And secondly, what constraints were imposed on the district court, or did the district court feel were imposed on it, by current law as to the deference of medical decision making? Assuming a hearing was to take place, the second tranche of issues we have are... If the hearing hadn't taken place, what is it you would want to happen? What we requested the district court to do in granting the initial injunction was to order Michigan State's health team to delete the report to the national practitioner. But they'd already sent the report in, hadn't they? They very quickly sent the report after the initial hearing. Our position was that... So they couldn't take it back. It's in the hopper, so to speak. No, actually, the data bank regulations, as well as the guidebook, provide for corrections to, and even removal of, reports to the data bank. But what would be the correction? I mean, there's no question your client was involved in a malpractice case. There's no question that he killed another person during the same procedure. There's no question, presumably, he didn't answer the call. Even state law provides acts of malpractice have to be reported. So the first lawsuit would have been reported. Your Honor is absolutely correct. There's a separate report that flows from a malpractice payment. We've not contested that, nor did we ask for that to be removed in the injunctive proceedings. But I'm hard-pressed to see all the things you're raising you can raise with HHS, right? That's not entirely clear. You can say, we didn't, I wasn't involved in a lawsuit that paid $625,000. That's false. Yes, although, again, we're not contesting that report of that malpractice payment. That's not an issue in this litigation. HHS is very clear on a couple of things. Number one, they will not undertake a merits review of the decision. The report that was made after the first hearing is the extant report today. That's what's on report with the data bank. It's actually part of the third tribes of issues I was going to raise. What did we learn during the hearing that affects what should have happened after the hearing? Reporting entities have an affirmative obligation to make corrections when they learn that there is an error or an omission. That's in the regulations at 45 CFR 60.6. You'd have to show an error or an omission. Correct. In the first administrative hearing, there was no findings, no written record, no record of any kind. And Dr. Sandgutman had no basis to challenge what was reported to the data bank because he had no information to compare what was reported to whatever the basis was for the governing board's decision. So what do you want? Do you want the district court to hold another hearing and say, now there is a basis? Does that help your client, to have the United States District Court to say, yeah, there now is a basis? Well, the first part of your question, what do we want? If Michigan State lost its jurisdiction to conduct any hearing, then we want no hearing, and we want any report that's based on a hearing that lacked due process to be removed pursuant to the regulations which permit removal. So that's what we want. Now, if there's going to be a hearing, we want that hearing to have appropriate due process protections under the Constitution. And where we take exception with how the second hearing occurred... Let's assume some of this is... What will you show? Well, if we say, okay, every conceivable aspect of due process has to come forth, what will you show that will say that this shouldn't be reported? The hoped-for outcome from another hearing before the governing board. What will you show? We know what they're going to show. What will you show that would change the finder of fact to say this would... We might not have to change anything or ask the District Court to change anything. The presumption is that... So the answer is you don't have anything else. No, what I'd like to do is go back to the governing board if there's going to be another hearing and have full access to counsel. You can go back to anything you want if you'd answer my question. I'm trying. As I understand the court's question, you're asking what do I want the District Court... If you have another hearing with all the due process you say you want, what is it you would show that would make a finder of fact say, gee, they reported the wrong stuff? If by finder of fact we mean the governing board, assuming they would be the... Whoever, I said... Whoever. Take my hypothesis. You get... An angel is your finder of fact. What would you show? Oh, if... Oh. I was trying to see between the court as a finder of fact and the employer, the state employer as a finder of fact. What would you show? What proof would you put in? I would go to the merit. We would argue with counsel's presence whether or not he should be suspended. What proofs would you put in? I would put in cross-examination of the witnesses who testified at the second hearing that were factually inaccurate. What proofs would you put in? I would put in proofs that the peer review procedures were not followed. But you just said we got this procedure. Now you're getting it. And I said, what is it you would do? You've got to prove that to get an injunction because it's called likelihood of success. The injunction we sought was an injunction with respect to due process. And we did show a lack of process. The bottom line of all this, unless there's some underlying inaccuracy in what was reported, you know, you've got a problem at the end of the day. And at the second hearing, the only thing your client presented was his own statement or testimony. I'm not sure, but I believe that Judge Sirhinridge is asking you, what else do you have? I mean, it's not apparent at this point that your client is in any position to contest the underlying facts that are included in the data that was reported. Is that... I mean, that's... And your client, in fact, has failed to respond. He finally, you know, did appear at the second hearing, but he failed to respond on many occasions prior to that. So he's hardly been eager to present evidence that might vindicate him with respect to the bases on which the action was taken against him by the governing board. My client suffered a handicap in developing that record before the governing board because he wasn't afforded an opportunity to have counsel ask questions. He did, in fact, question witnesses. And there's a statement that we didn't call any witnesses. He actually called the CEO of the governing body, who otherwise would have been presiding over the second hearing, but was recused because he was going to be a witness. Does he have some medical expert who would vindicate his surgical practices here? Indeed, the testimony of some of his colleagues who served on the peer review committee vindicated some of his practices. And the question before the governing body was a summary suspension. For instance, he was successful in the second hearing in disproving the notion about answering the call. There was a dispute between two doctors over who should handle the call patient, although that was reported to the data bank the first time around. There was testimony developed in deposition. The testimony you're talking about already was part of this decision. Deposition testimony... I was just asking about new testimony that would vindicate the surgical... Well, yes. A nurse, I believe her last name... Anderson, I believe is her name, Cheryl Anderson, testified at the second hearing. I was not able to cross-examine her. She testified as to multiple deaths when there were not multiple deaths. She testified that Dr. Sancutum didn't know why these patients had died, and that clearly wasn't part of the record. Part of the give and take in the hearing process, if counsel is permitted, is to change... That's nonsense that he didn't know what was happening. You know, I spent 20-some odd years doing this kind of stuff and defending doctors. He had a telephone. If he had an on-call and he didn't know what it was, he could have called up the ER. I mean, quick, that's it. I mean, to say he didn't know and that excuses him is utter nonsense. I didn't say he didn't know. I thought you did. No, if we're talking about a dispute between two doctors over who was going to handle an appendix... He was on-call. Two doctors were on-call. Well, but he was on-call. Yes, and the two doctors entered a dispute as to whether it was the first or second... Why would you invite a medical doctor? I mean, this is kind of rhetorical. Why would you get involved in a squabble with a colleague while a patient needs your attention? I mean, that just doesn't add up to me. But that aside, you're clearly confiding your comments to the least serious of the three incidents. The other two are deaths under situations when people would not have been expected to die in connection with the laparoscopic surgeries that were being performed. And did he make any effort to defend himself in connection with those or does he have any medical experts or others who would say that his performance in those situations was appropriate? I'm going to answer both questions. The first one is the statement that the on-call is the least serious. Well, clearly death of a patient is a very serious thing. In terms of databank reporting, reporting that would call into question his competency as a young surgeon. And that's an obstacle that a young surgeon can overcome. Reporting that he would let a patient die or that he refused to treat a patient makes him look not only incompetent, if that's what he is, but also like an idiot. And that personality defect is a very serious thing to future employment, as to the cases where patients die. You know, this is an interlocutory order. It is. What is it you'd want us to do? I'll try it a different way. The district court felt constrained in what it could do because it believed Michigan State did have jurisdiction and could hear a second hearing after the employment relationship ended. We question that. The district court also felt constrained on whether it could look at the merits. And the district court felt constrained whether it could look at the merits in issuing the injunction. I think the challenge the district court felt was it cared about databank. I don't know what the challenge... You're talking to us for relief and I'm trying to figure out what relief you want from us. I believe the district court abused its discretion when it ordered a second hearing because I believe that Michigan State lacks jurisdiction. Absent jurisdiction, it shouldn't hold a second hearing. Absent a complete proceeding with appropriate due process, the outcome of the flawed process should not be reported to the databank. So I would ask you to order... We can't do that. What is it you want us to do? If you can't do that... We're here in court, sir. What is it you want us to do? I would like you to remand for an additional hearing where my client has a right to counsel with voice before the decision maker. You can't explain anything you would put in in this hearing other than your great ability to cross-examine. If cross-examination is an engine for the truth... I mean, is that a fair statement? Yes, but the fact finder would have a new version of the facts. A fact finder could consider more fully... Assuming your cross-examination is successful. Assuming it is. If it's not successful, we may very well have the same outcome. But the question is, should doctors be forced... You have more than the same outcome. Your client will also have an official United States District Court finding him incompetent and never get a job. He would have no more than that than he does today. If the relief were a third hearing with counsel and there were a determination by the governing board to meet the same decision, that would be reported. That's not an action of the district court. That's an action of the governing body. You'll have your rebuttal time if there's nothing further. Thank you. Mr. Kiley. Good morning, Reynolds. It's a pleasure to be here. Michael Kiley, appearing for the defendants, the university defendants. First, I learned just last week that the Department of Health and Human Services process     I'm not sure if you've heard of it. It's an ongoing by HHS regarding the databank report. I have not seen whatever... That would have been precipitated by... My understanding is it's precipitated by Dr. Satgunam's action. But I've not seen any paperwork. But there is an ongoing, an active process.  What do you want? And he said earlier on, full due process. I just want to advise that at the hearing for the preliminary injunction, counsel agreed expressly with the court's suggestion that the constitutional provision set forth in letters authored by me earlier, particularly on May 31st, the fourth of five letters seeking plaintiff's cooperation, sufficed to provide constitutional due process. That's at page ID 1260. Counsel agreed. Was that the procedure... Did that outline the procedure ultimately utilized at the second hearing? Or was there something additional? It didn't outline the procedures used. Rather, it was a narrative in which I implored counsel to join and explained that it would be bias-free, we could get an outside hearing officer away from the university if desired, we'd have it transcribed, there'd be cross-examination. I listed a number of the procedures that I understood were of concern and invited counsel to advise me of anything that I might not have thought of. At that point, I'd never tried so hard. Was this before or after the second hearing? This was before. This was in May 2012. I've lost track of the time. I understand. I understand. But this was early on. While Dr. Satgunam was still employed at the university, his employment ended June 30, 2012. Up until that time, we were unable to communicate, secure communication, and then later on the argument was made, well, the university no longer has an interest in this and can't hear this matter. We pointedly sought plaintiff's cooperation. So is your assessment that Dr. Satgunam was hoping to have his contract with the university expire so that he could then make the jurisdictional argument? I can't help but wonder whether that's what was underneath all this, only because I tried so hard with letters and phone calls to establish communication and came up empty. In fact, on June 15, 2012, at counsel's request, I put off plaintiff's deposition, which was scheduled for two days later, because I was told, oh, I'm going to confer with my client. We may want to have another hearing. I never heard anything further. So I arrived at certain conclusions internally, but that's speculation as to what actually accounts for these things. All I know is we tried to offer due process. It was... Can I ask? Yes. I'm unclear as to the procedural aspect of this case right now. Hasn't the district judge said, okay, when you extinguish your administrative remedies, going to HHS and complaining, he still has jurisdiction, doesn't he? Yes. Regardless whether they agree with plaintiff or disagree with plaintiff, the district judge still has jurisdiction of the case, right? He does. As I read his... And once he does that, once the agency, or he exhausts his administrative remedies, then this gentleman can come back and ask the district court anything he wants. Now, whether the district court would do it or not is another thing, but isn't that the procedural process this is in? Presumably. In the opinion denying an emergency injunction modification, the last order from the district court, the last couple of pages the court explains, look, now that you've raised these new arguments indeed about HHS, you would need to proceed there before I could rule on that. So the court declined to go there. I'm not sure the court expressly said it, but presumably the court would be willing to go there Unless the court were to... There is a latches concern at some point because it took 11 months for that process. But at any case, this is an interlocutory order. The court ends up saying, I can't do anything more for you until you exhaust your administrative remedies. Right? Correct. And so when he does that, presumably the court still has a case and he can come back and ask the court to do anything, whether the court does it or not is immaterial, but he could do that, presumably. I can't argue with that. I think the district court has the authority to continue doing what it thinks it has to do. I don't think plaintiff is constrained in making requests, that is. Okay. Except insofar as the court has questions, I don't have anything further. Anything else? Thank you. Mr. Heron. Where plaintiff is constrained is that there is not a path to a hearing before the governing board with participation of counsel. But you heard what my little colloquy was. Was I correct or incorrect? The court retains jurisdiction. We can proceed for trial on damages for the initial denial of due process. The court has denied summary judgment. Or anything else you can think of. Or the pendent state law claims, which are still pending. But what my client cannot obtain on remand, shy of an interlocutory appeal, is the right to go back for a hearing. Now, maybe this could happen in a final ruling, but we'll try and get a hearing. But you may get a hearing if they deny you an HHS, you could ask the judge to conduct a hearing. Then you can dazzle them with your cross-examination. It may be that an appeal of an HHS decision may be under the Administrative Procedures Act. I'm not certain that the direct appeal is back to the Western District of Michigan. He still retains jurisdiction, doesn't he? He certainly has some jurisdiction. Whether he would have jurisdiction over that appeal of an HHS decision is not clear to me. Well, isn't that what he said? There's nothing I can do for you until HHS has made their decision. I mean, we're here in an interlocutory order. We're not here as the final arbiter of anything. In that regard, the argument we're making is that it was an abuse of discretion to require us to go through an administrative procedure to effectuate. That's your new argument now? No, that was the argument on modification once we learned what had occurred with the second hearing, is that the only databank report occurred after the first hearing. He says you agreed to the due process that the judge put out. I agreed, and I would agree with this panel, that ultimately what was proposed on the fourth or fifth letter comports with the current law of the district on what due process my client was entitled to. Clearly, when we're suggesting that he ought to be entitled to have counsel with voice, we are suggesting a modification to Yashin. That is a change in law. I cannot fault the district court for what it ordered, and I did represent to the court. The court asked me my understanding of current law, and I said yes, because I think that is a correct assessment of current law. That law puts a publicly employed physician in a very dangerous position. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully.